IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CATHERINE M. CONRAD,
    *Plaintiff*,

v.

CHRISTIAN HENNINGSEN, *et al.*,
    *Defendants*

Civil Action No. JMC-21-2951

**MEMORANDUM OPINION**

    Between approximately August 2020 and January 2021, Plaintiff Catherine Conrad worked as an employee of Bright Eyes Sanctuary ("Bright Eyes"), a nonprofit animal shelter in Hagerstown, Maryland. In November 2021, she filed this action against Bright Eyes and its owners, Christian Henningsen and Patricia Henningsen (collectively "Defendants"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and analogous state law, along with other claims. *See* ECF No. 1 ("Compl."). The parties have settled the action, and now request the Court's approval of their settlement agreement. *See* ECF No. 51 ("Jt. Mot."). Because the proposed terms represent a fair and reasonable resolution of a bona fide FLSA dispute, the settlement will be approved.

**I.    BACKGROUND**

    Ms. Conrad made several claims against her former employer in the nine-count complaint, including allegations that Defendants failed to pay her both standard time and overtime pay in violation of the FLSA, the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-430, and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-502 and 3-505. *See* Compl. ¶¶ 96, 102, 109, 110, 113, 115, 116, 120-22, 143, 147. Defendants denied liability in a responsive pleading filed in September 2022, *see*

ECF No. 22, and the parties jointly requested a settlement conference with the Court a month later. *See* ECF No. 27. When that conference was unsuccessful, the parties engaged in several weeks of formal discovery. But they eventually resumed settlement discussions, reaching a compromise after a second settlement conference in January 2024. They subsequently filed the now-pending joint motion, along with a copy of their proposed settlement agreement. *See* Jt. Mot. at 5-13 (the "Agreement").[1]

The Agreement provides that, subject to the Court's approval, Defendants will pay Ms. Conrad $5,500. *Id*. ¶ 2. After an initial payment of $500, the balanced is to be distributed in twenty-five monthly installments of $200, due on the first of each month. *Id*. ¶ 2.2. There is a late payment provision imposing a 10% penalty on installments paid more than ten days past due and a liquidated damages provision for repeated delinquent payments. *Id*. ¶ 5. Failure to timely pay two installments within the applicable grace period will be treated as breach of the Agreement, immediately triggering Ms. Conrad's right to $12,000. *Id*. ¶ 5.2. With certain exceptions, including "any claims that cannot be released as a matter of law," the parties have consented to release each other "fully, finally and forever" from "any and all claims whether now known or unknown, suspected or unsuspected, which now exist, may exist, or previously have existed." *Id*. ¶ 7. They also agree to have no further contact with each other. *Id*. Counsel for Ms. Conrad is not seeking fees or costs as part of the settlement agreement. Jt. Mot. at 2.

II.     DISCUSSION

Congress enacted the FLSA to protect workers from "substandard wages and excessive hours" that resulted from unequal bargaining power between employers and employees. *See*

---

[1] The Agreement is included as part of the motion itself, rather than as a separate attachment. Accordingly, when discussing the Agreement, this memorandum will reference the pertinent provision by its numbered paragraphs wherever possible.

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To that end, the statute's provisions generally cannot be waived or modified. *See id*. at 707. Settlement of claims asserted under the FLSA are permitted, of course, provided that such a settlement either (a) is supervised by the Secretary of Labor or (b) as is requested in the present case and is the more common scenario, "reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc*., DKC–12–1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

The Fourth Circuit has not established a definitive rubric for determining the propriety of a FLSA settlement, but district courts in this circuit have adopted the considerations set forth in the Eleventh Circuit's *Lynn's Food Stores* case. *See*, *e.g*., *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407-08 (D. Md. 2014). Under this approach, the Court determines whether a settlement provides "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355.

The first step of the analysis requires the Court to confirm that there are FLSA issues "actually in dispute." *Id.* at 1354. To determine whether a *bona fide* dispute exists, the Court reviews the pleadings, the recitals in the Agreement, and other court filings in the case. *See Duprey*, 30 F. Supp. 3d at 408 (citing *Lomascolo v. Parsons Brinckerhoff, Inc*., No. 08–1310, 2009 WL 3094955, at *16-17 (E.D. Va. Sept. 28, 2009)). Next, courts assess the fairness and reasonableness of a settlement itself, which involves considering all relevant factors, including:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff[]; (5) the opinions of class counsel . . . ; and (6) the

3

> probability of plaintiff['s] success on the merits and the amount of
> the settlement in relation to the potential recovery.

*Yanes v. ACCEL Heating & Cooling, LLC*, No. PX-16-2573, 2017 WL 915006, at *2 (D. Md. Mar. 8, 2017) (quoting *Lomascolo*, 2009 WL 3094955, at *10). These factors are usually satisfied if there is an "assurance of an adversarial context," and the employee is "represented by an attorney who can protect [his or her] rights under the statute." *Duprey*, 30 F. Supp. 3d at 408 (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

### A.   *Bona Fide* Dispute

The parties stipulate in their joint motion that a *bona fide* dispute exists. *See* Jt. Mot. at 2. A review of the relevant pleadings and filings of this case supports that assertion, as they are genuinely at odds over liability. Ms. Conrad alleges that in her almost five months as a Bright Eyes employee, she worked approximately 875 hours and received a total of less than $2,200. Compl. ¶ 97. She also claims that, although she worked over 40 hours a week on average, Defendants willfully refused to pay her overtime compensation. *Id.* ¶ 96, 110, 143. Defendants, however, expressly deny "that they engaged in any impropriety, wrongdoing, or liability of any kind whatsoever." Agreement ¶ 8. Furthermore, continued litigation presented substantial risks to Ms. Conrad regarding the collectability of any judgment. *See* Jt. Mot. at 2. Defendants' denials and the parties' overall disagreement confirms there is a *bona fide* dispute between them.

### B.   Fairness and Reasonableness of Settlement Terms

Having examined the parties' submissions and considered the relevant factors, the proposed settlement appears to be a fair and reasonable compromise of the *bona fide* dispute. Ms. Conrad is represented by competent counsel, who endorses the proposed settlement as fair and in the interests of his client. *See* Jt. Mot. at 2. There is no evidence that the Agreement is the product of fraud or collusion. *See Lomascolo*, 2009 WL 3094955, at *12 ("There is a

presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."). The parties have exchanged discovery and expressly assert that the Agreement "has been negotiated at arm's length." Agreement ¶ 10.9. They have therefore had sufficient opportunity to obtain evidence and evaluate the strength of their respective arguments. Both sides acknowledge the reality of "Defendants' current financial situation." Jt. Mot. at 2. The parties represent that settlement at this stage of the proceedings is advantageous, and in alignment with their mutual desire to avoid the time, expense, and uncertainty of further litigation. *Id.*

Although general release language can render an FLSA settlement agreement unreasonable, *see Duprey*, 30 F. Supp. 3d at 410 (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010)), the parties' release in this case is appropriate under the circumstances. This has been a contentious case involving sensitive issues. Where, as here, the "employee is compensated reasonably for the release executed, the settlement can be accepted" and the Court need not consider the "reasonableness of the settlement as to the non-FLSA claims." *Id*.

As the applicable factors all weigh in favor of approval, the Court is satisfied that the Agreement "reflects a reasonable compromise over issues actually in dispute." *Lomascolo*, 2009 WL 3094955, at *8. The proposed settlement will be approved.

### III.   CONCLUSION

For the reasons stated above, the parties' joint motion for final approval of the settlement will be granted. A separate order will follow.

Date:  March 22, 2024                       */s/ Adam B. Abelson*
                                            Adam B. Abelson
                                            United States Magistrate Judge